**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MISAEL FRANCISCO NAJARRO-PORTAL, AKA Francisco Julio Ceaser Portal, AKA Misael Portal, AKA Julio Cesar Portal Najarro, DBA Misael Portal-Najarro, | No. 13-73958 |
| | Agency No. A087-967-903 |
| Petitioner, | |
| v. | MEMORANDUM* |
| LORETTA E. LYNCH, Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted September 15, 2015
San Francisco, California

Before: W. FLETCHER, BERZON, and BEA, Circuit Judges.

Misael Francisco Najarro-Portal appeals from the BIA and IJ's decision

denying his application for withholding of removal under the Immigration and

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Nationality Act and the Convention Against Torture ("CAT"), as well as deferral of removal under CAT.

1. Substantial evidence supports the BIA and IJ's conclusions that there are serious reasons to believe Najarro-Portal committed serious non-political crimes in El Salvador. *See Go v. Holder*, 640 F.3d 1047, 1052 (9th Cir. 2011). Najarro-Portal was convicted of committing several robberies in El Salvador in 1997. Although Najarro-Portal contends he was convicted of those crimes in absentia, and therefore that his conviction was invalid, the question is whether there are serious reasons to believe he *committed* a serious, non-political crime, not whether there are serious reasons to believe he was properly convicted. *See id.* (explaining that "serious reasons to believe" is equivalent to probable cause). Here, given the witness testimony cited as evidence of the crimes, substantial evidence supports the finding that there are serious reasons to believe Najarro-Portal committed the 1997 robberies. Accordingly, Najarro-Portal is not entitled to withholding of removal.

2. Substantial evidence also supports the IJ's adverse credibility finding. *See Shrestha v. Holder*, 590 F.3d 1034, 1046–47 (9th Cir. 2010). The IJ primarily based the adverse credibility finding on inconsistencies in record evidence regarding whether Najarro-Portal was a leader of the gang MS-13, rather than just a member. Najarro-Portal maintains that the evidence is not inconsistent because

2

prison officials in El Salvador *viewed* him as a leader of the gang.  Our review of the IJ's credibility finding is "significantly restricted," however.  *Shrestha*, 590 F.3d at 1041 (quoting *Kaur v. Gonzales*, 418 F.3d 1061, 1064 n.1 (9th Cir. 2005)). Accordingly, because the IJ identified portions of the record that could reasonably be viewed as inconsistent with Najarro-Portal's testimony on the gang leadership question, we uphold that determination as supported by substantial evidence.  *See id.* at 1044.

3.  Excluding all of Najarro-Portal's testimony, however, as we must given the IJ's adverse credibility finding, *see Shrestha*, 590 F.3d at 1048–49, we conclude that Najarro-Portal is entitled to deferral of removal under CAT.  *See Maldonado v. Lynch*, 786 F.3d 1155, 1162 n.7 (9th Cir. 2015) (en banc).

Ample evidence supports Najarro-Portal's claim that he will be tortured if returned to El Salvador, including: testimony by his attorney, Jaime Mira, who met with and relayed information from multiple concerned individuals in El Salvador not able to attend the proceedings in person; Mira's declarations; translated records from Najarro-Portal's prison file regarding his petitioning activities, prison transfers, and injuries while in prison; the declaration of Eliza Aracely Sarceño Monge, Najarro-Portal's ex-girlfriend and the mother of his child; the declaration of Juan de Dios Masias, a friend who attends the same church in the United States

as Najarro-Portal; Najarro-Portal's mother's testimony before the IJ; translated letters from Najarro-Portal to his mother; and country reports. This evidence compels the view that Najarro-Portal will more likely than not be tortured if returned to El Salvador. *Cf. Shrestha*, 590 F.3d at 1048–49.

For instance, records from Najarro-Portal's prison file demonstrate that he was actively engaged in petitioning activities while imprisoned in El Salvador.[1] The petitions show that he sought, on behalf of himself and others, such basic conditions as an adequate water supply, functioning electricity, and access to classes and workshops, and that although the petitions were filed in his name, he sought broad changes. In addition, as to himself only, he requested, among other things, transfers to other prison facilities, medical care, and a hearing to be released after serving two-thirds of his sentence. Najarro-Portal's petitioning activity is closely linked to the reason he fears harm if returned to El Salvador.

Jeanne Rikkers, a U.S. citizen with whom Mira spoke in El Salvador, confirmed that Najarro-Portal was an original member of a group called OPERA,

---

[1]Mira explained that documentation of much of Najarro-Portal's petitioning directly on behalf of other inmates is unavailable because the prison records are not digitized, and because documents filed for other prisoners would be kept in those prisoners' files, not Najarro-Portal's. Monge did not keep the petitions, in part because keeping those types of documents, she said, could lead to problems with police.

which advocated for prisoners' rights. OPERA members, according to Rikkers, were mistreated and subject to frequent prison transfers. One member had been killed in prison, and most feared for their lives and had fled the country, died, or were still in prison.

Judge Astrid de los Angeles Torres, who oversaw prison conditions in El Salvador, explained to Mira that prisoners like Najarro-Portal, who file complaints and are perceived as protest leaders, are mistreated, forcefully transferred to different prisons, put in solitary confinement, and accused of being gang leaders to justify their treatment. She was also certain that Najarro-Portal would be killed if returned to El Salvador—either directly at the hands of government officials, or by gang members, with the officials' complicity. Monge agreed that if Najarro-Portal were returned to El Salvador, he would be killed, and explained that gang members told her it was in her best interest to inform them if Najarro-Portal returned to El Salvador "because they were not happy with him."

The record contains evidence of the actual harm Najarro-Portal suffered at the hands of government authorities in El Salvador. Najarro-Portal's prison file reveals that prison guards severely injured his jaw, probably breaking it, and then left him without treatment for some period of time, such that his jaw did not heal and he lost a "major" amount of weight due to not being able to eat. The jaw

injury also made it difficult for him to speak. Along with prison records, Najarro-Portal's letters to his mother, his mother's testimony before the IJ, and Judge Torres' statements confirm that prison guards beat Najarro-Portal, caused bruising on his face, and broke his jaw.

Also, Najarro-Portal was moved to the Zacatecoluca prison, reserved for "troublemakers," with the intent that the harsh conditions and isolation there would stifle their activism. Country reports echo Zacatecoluca's bad reputation.

Further, Monge told Mira that police officers visited the house she shared with Najarro-Portal multiple times, including waiting for him upon his release from prison and warning him "that it was best for him to leave town or they would harm him." Consequently, Najarro-Portal went into hiding. The visits continued after Najarro-Portal left for the United States. Monge also recounted an incident after Najarro-Portal was released from prison when police kidnapped him and drove him into rival gang territory, then stripped him and left him naked and at the mercy of the rival gang.

In light of this uncontradicted evidence, Najarro-Portal is entitled to deferral of removal under CAT.

**PETITION GRANTED; REMANDED for further proceedings.**

*Najarro–Portal v. Lynch*, No. 13-73958

BEA, Circuit Judge, dissenting:

I agree with the majority that petitioner Misael Francisco Najarro–Portal is not entitled to withholding of removal and that substantial evidence supports the immigration judge's ("IJ") adverse credibility determination. Unlike the majority, I would also find that Najarro–Portal is not entitled to deferral of removal under the Convention Against Torture ("CAT").

For Najarro–Portal to be entitled to deferral of removal under the CAT, we must find sufficient evidence in the record—other than Najarro–Portal's testimony, account the IJ's adverse credibility finding—to compel the conclusion that it is more likely than not that Najarro–Portal would be tortured by or with the acquiescence of Salvadoran officials if he were removed to El Salvador. *See Shrestha v. Holder*, 590 F.3d 1034, 1048–49 (9th Cir. 2010); *see also* 8 C.F.R. § 1208.18(a) (defining "torture" for purposes of the CAT). I find the record insufficient to compel that conclusion.

I note first that when Najarro–Portal hired Jaime Mira as his attorney, he told Mira that he believed he had faced persecution[1] in El Salvador because he

---

[1] Whether a petitioner will be "persecuted" is relevant for granting asylum. *See* 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 208.13. Najarro–Portal originally sought
(continued...)

1

refused to talk about human-rights violations he witnessed while serving in the Salvadoran army. Mira discovered, after reviewing Najarro–Portal's prison file from El Salvador, that prison officials may have mistreated Najarro–Portal due to Najarro–Portal's advocacy of prisoners' rights. Mira then based Najarro–Portal's immigration case on that story. This is important for two reasons: (1) It is undisputed that Mira proffered only a fraction of Najarro–Portal's prison records during the immigration proceedings, and he could have excluded documents that would have contradicted the story he crafted, and (2) the majority relies in large part on Mira's statements as to what Jeanne Rikkers, Judge Astrid de los Angeles Torres, and Eliza Aracely Sarceño Monge told him, which are mostly uncorroborated. I do not mean to impugn Mira's character, but I find this hearsay evidence insufficiently weighty to displace the decisions of the IJ and the Board of Immigration Appeals ("BIA"), who are better positioned to make credibility determinations and to whom we afford significant deference.

The other evidence in the record also does not compel the conclusion that Najarro–Portal was, or will be, tortured by Salvadoran officials. True enough, there

---

[1](...continued)
asylum, but concedes he is ineligible for it. Whether Najarro–Portal will be "persecuted" if he returns to El Salvador is not the relevant inquiry for granting relief under the CAT. *See* 8 C.F.R. §§ 1208.16–.18.

is documentation of Najarro–Portal's prison transfers and his broken jaw, but there is nothing connecting those transfers and his injury to malfeasance of prison officials. The undated letters Najarro–Portal wrote to his mother similarly fail to make that connection; they mention "the beatings I am receiving" and his injury, but do not tie prison officials to any abuse Najarro–Portal received in prison.[2] As Najarro–Portal admitted to joining a gang in prison for "protection," and was viewed as a gang leader, the record supports other plausible reasons for his injury. In fact, years later, while he was in the United States and presumably safe from Salvadoran prison officials, Najarro–Portal told members of his church that his jaw was broken in a prison "quarrel" without saying that prison officials were involved.

Monge's declaration supports a finding that Najarro–Portal may be harmed if he returns to El Salvador, but suggests that Salvadoran prisoners and their friends—not Salvadoran officials—are likely to inflict the harm. Moreover, the declaration suffers from credibility problems of its own: Monge wrote it in June

[2] Admittedly, Najarro–Portal's mother testified before the IJ that she saw her son in prison with a broken jaw and bruised face and that Najarro–Portal told her "the authorities" beat him up. The IJ could reasonably have found her account not credible. Najarro–Portal's mother was not clear about when she saw Najarro–Portal in prison, and her testimony that she saw Najarro–Portal with a broken jaw in 2006 is inconsistent with other evidence showing that his jaw was broken in 2004. Moreover, Najarro–Portal's mother testified that she went to the immigration hearing from El Salvador when other evidence showed that she is a U.S. citizen and was living with Najarro–Portal and his wife in California.

2011, when she was "preparing to migrate to Canada," but she was not made available during the immigration proceedings that occurred over a year later, even though the IJ requested that she testify.[3]

Najarro–Portal's fear of being tortured or killed by Salvadoran officials is undermined by his experience in El Salvador. Najarro–Portal spent the last few months of his prison sentence in a prison in Ciudad Barrios, apparently without incident. He was free for several months, during which time he was not killed or harmed, and was re-imprisoned on a drug-possession charge. Najarro–Portal then spent another several months in jail, and there is no evidence that government officials harmed him during that time.

For all of these reasons, I do not believe that Najarro–Portal has shown that the record compels the conclusion that it is more likely than not that he would be tortured by or with the acquiescence of Salvadoran officials if he were removed to El Salvador. As a result, I would not find him entitled to deferral of removal under the CAT, and I respectfully dissent from that portion of the majority's decision.

---

[3] The IJ stated: "[W]e've got to get testimony from [Monge] because there's an issue; in her declaration there's some issues. And it's important because she's the only one who's able to testify about events post-prison to the extent that this, that, and the other thing happened in prison, he's not in prison. They released him. He's not under any charges in El Salvador. So then what happened after he got out becomes critical. And she's the only witness to that."